**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Jill Laakso, | : |
| | : |
| Plaintiff, | : |
| v. | : Civil Action No.: 2:13-cv-01111-LDW-WDW |
| | : |
| RGS Financial, Inc.; | : |
| Penn Toyota, Ltd.; | : **AMENDED CLASS ACTION** |
| Toyota Motor Credit Corporation; | : **COMPLAINT** |
| and DOES 1-7, inclusive. | : |
| | : |
| Defendants. | : |

This Amended Class Action Compliant is filed as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).  *See* Fed. R. Civ. P. 15(a)(1)(B).  This Amended Class Action Compliant is filed within twenty-one (21) days of service of the Answer.

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff Jill Laakso, by and through her undersigned counsel, pleading on her own behalf, individually, and on behalf of all others similarly situated, states as follows:

**JURISDICTION AND VENUE**

1.      Plaintiff, Jill Laakso, by and through her undersigned counsel, seeks redress for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq., ("FDCPA") and the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq., ("TCPA") by Defendant RGS Financial, Inc., (hereinafter "RGS") and their agents in their illegal efforts to collect an alleged consumer debt.  The Plaintiff also seeks redress for violations of the New York Motor Vehicle Leasing Act, N.Y. PEP. LAW §§330-353 by Defendants Penn Toyota and Toyota Motor Credit Corporation.

1

2.      This action arises primarily out of Defendant RGS's repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., ("FDCPA").  Pursuant to 15 U.S.C. § 1692k(d), this Court has jurisdiction over actions arising out of violations of the FDCPA.

3.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all other claims in this action, as all such claims arise out of the same case or controversy that is described herein.  The claims asserted against Defendants Penn Toyota and Toyota Motor Credit Corporation are part of the same case and controversy.

4.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District, as all Defendants transact business in this District and a substantial part of the events giving rise to this claim occurred in this District.

## PARTIES

5.      The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

6.      The Plaintiff, Jill Laakso ("Plaintiff"), is an adult individual residing in Bayville, NY, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

7.      Defendant RGS Financial Inc. ("RGS"), is a Texas business corporation with a principal executive office located at 1700 Jay Ell Drive, Suite 200, Richardson, TX 75081.  RGS operates as a collection agency and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

8.      DOES 1-5 ("RGS Agents") are individuals employed by RGS whose identities are currently unknown to the Plaintiff.  One or more RGS Agents may be joined as parties once

2

their identities are disclosed through discovery.  At all times, RGS acted by and through one or more of its Agents.

9.      Defendant Penn Toyota, Ltd., ("Penn Toyota") is a New York business corporation, with a principal executive office located at 2400 Northern Blvd., Greenvale, NY 11548.

10.     DOES 6-7 ("Penn Toyota Agents") are individuals employed by Penn Toyota whose identities are currently unknown to the Plaintiff.  One or more Penn Toyota Agents may be joined as parties once their identities are disclosed through discovery.  At all times, Penn Toyota acted by and through one or more of its Penn Toyota Agents.

11.     Toyota Motor Credit Corporation ("Toyota Credit") is a California business corporation with a principal executive office located at 19001 S. Western Ave., EF-12, Torrance, CA, 90501.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

12.     The Plaintiff allegedly incurred a financial obligation (the "Debt") to Toyota Credit or Penn Toyota (the "Original Creditors").

13.     The alleged Debt arose from services provided by the Original Creditors which were primarily for family, personal, or household purposes and which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

14.     The alleged Debt was purchased, assigned, or transferred to RGS for collection, or RGS was employed by the Original Creditors to collect the alleged Debt.

15.     The Defendant RGS attempted to collect the alleged Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

**A.  RGS Financial Inc. Engages in Harassment and Abuse**

16.     The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

17.     The Plaintiff has been receiving continuous calls from Defendant RGS regarding the alleged Debt for several months prior to the commencement of this action.

18.     Upon information and belief, the aforementioned calls were made by RGS Agents.

19.     The Defendant RGS engaged in communications the purpose of which was to collect a debt.

20.     Upon information and belief, Defendant RGS made numerous calls from an automatic telephone dialing system to the Plaintiff's cellular phone.

21.     The Plaintiff, who has had to pay cellular charges for the above-mentioned calls, had never given permission or consented to the calls that were made to her cellular phone by Defendant RGS and RGS Agents.  The lease agreement detailed *supra* did not contain the Plaintiff's cellular phone number, and the Plaintiff did not otherwise give any kind of express consent to be contacted on her cellular phone.

22.     On January 15, 2013, the Plaintiff received calls to her cellular phone from Defendant RGS.  The Plaintiff responded in writing by texted back and asking Defendant RGS to never to contact her again on her cellular phone or her work phone line.

23.     Between January 15, 2013, and January 24, 2013, Defendant RGS called Plaintiff several times at her work phone line.  The Plaintiff told the RGS Agent(s) that 1) she does not owe a debt, 2) she does not want to receive any further calls at work or on her cell phone, and 3) any further contact must only be in writing.

4

24.     During the above-mentioned calls, the RGS Agents failed to provide 1) a full and meaningful disclosure of the identity of the caller, 2) a full and meaningful disclosure of the company that was calling, 3) the amount of the Debt, and 4) information on the Plaintiff's right to dispute the Debt.

25.     Defendant RGS did not provide any written correspondence or validation notice after contacting the Plaintiff by telephone.

26.     During the last of the above-mentioned conversations, the Plaintiff advised the RGS Agent that she would be reporting him for unfair debt collection actions and would not like to receive further calls.  The Plaintiff asked the RGS Agent for his name and the RGS Agent hung up on the Plaintiff.

**B.  Plaintiff Suffered Actual Damages**

27.     The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

28.     The Plaintiff, individually and not as a class member, has suffered and continues to suffer actual damages as a result of the Defendant RGS's unlawful conduct.

29.     As a direct consequence of the Defendant RGS's acts, practices and conduct, the Plaintiff, individually and not as a class member, suffered and continues to suffer from humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment.

**C.  Penn Toyota and Toyota Motor Credit violate New York Leasing Laws**

30.     The Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

31.     The above-stated calls by Defendant RGS and RGS Agents occurred pursuant to an alleged Debt that was created *via* a lease agreement (hereinafter "Lease Agreement") between the Plaintiff, Penn Toyota, and Toyota Motor Credit Corporation.

32.     If it was not for the acts and omissions committed by Penn Toyota and Toyota Motor Credit Corporation, described *infra*, the Plaintiff would not have been harassed by Defendant RGS and other collection companies.

33.     On or about September, 2006, the Plaintiff leased a Toyota vehicle from Penn Toyota subject to a Lease Agreement.  Penn Toyota was stated as "Lessor (Dealer)" and the Plaintiff was stated as "Lessee."  The Lease Agreement stated "The words 'we,' 'us' and 'our' refer to the Lessor, and after assignment, Toyota Motor Credit Corporation."  As per the Lease Agreement, the lease termination date (hereinafter "Lease Termination Date") was scheduled for September, 2009.

34.     The Plaintiff returned the vehicle in September, 2009, in good condition, with ordinary wear and tear, and no excessive damages.  The vehicle was not driven past the miles allotted through the Lease Agreement, and the vehicle did not have hail damage, dents, burns, or severe panel damage.

35.     When the vehicle was turned in, no Penn Toyota Agent performed any kind of detailed or cursory inspection.

36.     At no point within forty (40) days preceding the lease termination date did the Plaintiff receive any notice stating a) that the Lease Agreement allows the Lessor to assess a charge for excess wear and damage to the vehicle and/or b) the Plaintiff should obtain her own evidence of the current condition prior to the scheduled termination.

37.    At no point within forty (40) days preceding the lease termination date did the Plaintiff receive any notice stating the Plaintiff's right to turn the vehicle in with a copy of an itemized appraisal of excess wear and damage.

38.    Several weeks after turning in the vehicle, the Plaintiff received a letter from Toyota Credit six weeks after the vehicle was turned in.  The letter was mailed *via* regular mail, and was dated October 15, 2009, even though that was far from the date the letter was received. The letter indicated that the Plaintiff had excessive wear and use and mileage charges.  The letter indicated that $1,565.84 was due immediately.

39.    Attached to the letter was a document entitled "Condition Report."  The Condition Report was not signed, and did not indicate the name of any appraiser.  The Condition Report indicated that the vehicle had hail damage, burns, dents, and severe panel damage.

40.    The Plaintiff then began receiving calls from collection agencies, who refused to accept any dispute or attempt to resolve the matter.  The Plaintiff also raised the issue with Toyota Credit, where she was passed from one person to another without any kind of final resolution.

41.    The lease charges were false, as there was no excessive mileage or wear and tear on the vehicle.

42.    Upon information and belief, the vehicle was damaged by Penn Toyota Agents after the vehicle was turned in, or was damaged by some other means after the vehicle was turned in to Penn Toyota.  Thereafter, a false damage report was created.

**COUNT I**
**Violations of the Fair Debt Collection Practices Act**
**15 U.S.C. § 1692, et seq. brought by the Plaintiff, *individually* and not**
**as part of a class**

7

43.     The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

44.     The Defendant RGS's conduct violated 15 U.S.C. §1692c(a)(1) and 1692c(a)(3) by calling her at work after she specifically told them not to call her there.  The Defendant RGS was on notice that Plaintiff was not permitted to receive calls at work after the first time she requested the calls to stop.

45.     The Defendant RGS's conduct violated 15 U.S.C. §1692c(c) by continuously calling Plaintiff after her written notice to Defendant's on January 15, 2013 to cease the phone calls to her cellular phone and work phone line.

46.      The Defendant RGS's conduct violated 15 U.S.C. §1692d by engaging in conduct that natural consequence of which was to harass, oppress, and/or abuse the Plaintiff.

47.     The Defendant RGS's conduct violated 15 U.S.C. §1692d(5) by continuously calling the Plaintiff on her cellular phone and allowing her cellular phone to ring repeatedly.

48.     The Defendant RGS's conduct violated 15 U.S.C. §1692e(10) in that the Defendants used a false an deceptive means to attempt to collect the alleged Debt.

49.     The Defendant RGS's conduct violated 15 U.S.C. §1692e(11) in that the Defendants failed to make proper disclosures regarding the identity of the caller and purpose of the call.

50.     The Defendant RGS's conduct violated 15 U.S.C. §1692f in that the Defendants used an unfair and unconscionable means to collect or attempt to collect an alleged Debt.

51.     The Defendant RGS's conduct violated 15 U.S.C. §1692f(1) and 15 U.S.C. §1692(e)(5)  by attempting to collect an amount, not authorized by law, that was greater than any

original agreement; and by threatening an action that was not intended and was not permissible by law.

52.    The Defendant RGS's conduct violated 15 U.S.C. §1692g by failing to provide a written notice of a valid debt to the Plaintiff.

53.    The Defendant RGS's conduct violated 15 U.S.C. §1692g(a)(1)-(5) by failing to disclose the amount of the Debt, and provide information on the Plaintiff's right to dispute the Debt.

54.    The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the FDCPA, including every one of the above-cited provisions.

55.    The Plaintiff, individually and not as part of a class, is entitled to damages as a result of Defendants' violations detailed under Count I.

**COUNT II**
**Violations of the Fair Debt Collection Practices Act**
**15 U.S.C. §1692, et seq. brought by the**
**Plaintiff on behalf of herself and the members of a class**

56.    The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

57.    This cause of action is brought on behalf of the Plaintiff and the members of a similarly situated class.

58.    The Plaintiff proposes a class defined as follows: **All consumers who reside in the State of New York to whom Defendants 1) made an initial communication within one year of the filing of this Complaint, and 2) failed to send such consumers written notification and disclosures as required by FDCPA 15 U.S.C. §1692g.**

59.     Pursuant to Federal Rule of Civil Procedure 23, a class is appropriate and preferable in this case because:

    a.  Based on the fact that routine telephone calls, written collection statements, and general correspondence from the Defendants are at the heart of this litigation, the class is so numerous that joinder of all members is impracticable.

    b.  There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members.  The principal question presented by this claim is whether Defendants violated the FDCPA in its debt collection practices, namely its failure to send appropriate notices to the Plaintiff and class members as required by 15 U.S.C. 1692(g)(a).

    c.  Identification of the consumers who did not receive the appropriate notices from the Defendants, described more fully in the class definition, *supra*, is a matter that can best be determined from the Defendants' records.

    d.  The precise number of consumers in this class is unknown at this time and can only be discerned through discovery.  However, upon information and belief, the Defendants are hired by the Original Creditor, defined *infra,* and other creditors who market business to thousands consumers in New York. Therefore, the members of the class are believed to be so numerous that joinder of all members is impractical.

    e.  The claims of the Plaintiff for this cause of action are typical of those of the class members.  All are based on the same facts and legal theories.

f.   The Plaintiff will fairly and adequately represent the class members' interests.  The Plaintiff has retained counsel experienced in bringing class actions and collection abuse claims.  The Plaintiff's interests are consistent with those of the members of the class.

g.   A class action is superior for the fair and efficient adjudication of the class members' claims.  Congress specifically provided, at 15 U.S.C. §1692k, for the commencement of class actions as a primary means of enforcing the FDCPA.

h.   Absent a class action, most members of the class would find the cost, time, and ability of engaging in protracted litigation prohibitive.

i.   The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the court and the litigants and promotes consistency and efficiency of adjudication.

j.   Prosecution of separate actions could result in inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants and other debt collectors.

k.   The amount of damages at issue is such that proceeding by way of a class action is the most economical and sensible manner to vindicate the injuries sustained by Plaintiff and the other members of the class.

60.   The Defendant RGS's conduct violated 15 U.S.C. §1692g against Plaintiff and class members by failing to notify the Plaintiff and class members their rights to validate a debt.

61.     The foregoing acts and omissions of the Defendants constitute violations of the

FDCPA, including every one of the above-cited provisions, for which the Plaintiff and class

members are entitled to damages as prayed for herein.


## COUNT III
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227, et seq.

62.     The Plaintiff incorporates by reference all of the above paragraphs of this

Complaint as though fully stated herein.

63.     To communicate with and contact the Plaintiff, the Defendants' used an automatic

dialing system, which is defined in 47 U.S.C. § 227(a)(1) as equipment that has the capacity dial

and "to store or produce numbers to be called, using a random or sequential number generator."

64.     The Defendants' conduct violated 47 U.S.C. § 227(b)(1)(A)(iii) in that

Defendants used an automatic dialing system (repeatedly and continuously) to call Plaintiff's

cellular phone without Plaintiff's permission.

65.     The foregoing act or omission of the Defendants constitute numerous and

multiple violations of the TCPA.


## COUNT IV
## VIOLATIONS OF THE NEW YORK MOTOR VEHICLE RETAIL LEASING ACT
## N.Y. PEP. LAW §§ 330-353

66.     The Plaintiff incorporates by reference all of the above paragraphs of this

Complaint as though fully stated herein.

67.     Defendants Penn Toyota and Toyota Credit (hereinafter "Toyota Defendants")

violated N.Y. PEP. LAW §343(1)(a) in that Toyota Defendants charged a charge for excess wear

and tear which exceeded the actual cost of repairs, or exceeded a true itemized estimate of the cost of such repairs by a licensed appraiser.

68.     The Toyota Defendants violated N.Y. PEP. LAW §343(2) in that Toyota Defendants failed to inform the Plaintiff of her rights and obligations within forty (40) days preceding the scheduled termination date.

69.     The Toyota Defendants violated N.Y. PEP. LAW §343(2)(b) in that Toyota Defendants failed to properly and timely inform the Plaintiff of her right to turn in the vehicle with a copy of an itemized appraisal of excess wear and tear.

70.     The Toyota Defendants violated N.Y. PEP. LAW §343(3)(b) in that Toyota Defendants failed provide the Plaintiff with a properly signed, and dated written appraisal.

71.     The Toyota Defendants violated N.Y. PEP. LAW §343(3)(a) in that Toyota Defendants failed to timely send by registered mail or hand-delivery an itemized bill of excess wear and damage.

72.     The foregoing acts or omissions of the Toyota Defendants constitute numerous and multiple violations of the New York Motor Vehicle Retail Leasing Act.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that judgment be entered against the Defendants as follows:

1.  Awarding the Plaintiff and class members statutory damages pursuant to 15 U.S.C. §1692k;

2.  Awarding Plaintiff actual damages including, but not limited to, the emotional distress the Plaintiff has suffered and continues to suffer as a result of the intentional, reckless, and/or negligent FDCPA violations and

intentional, reckless, and/or negligent invasions of privacy pursuant to 15
U.S.C. §1692k(a)(1);

3. Awarding Plaintiff the greater of actual monetary loss or $500.00 for each
call placed in violation of the TCPA, pursuant to 47 U.S.C. §227(c)(5);

4. Awarding Plaintiff statutory damages pursuant to N.Y. PEP LAW §346(4).

5. Awarding Plaintiff actual damages pursuant to N.Y. PEP LAW §346(1).

6. Awarding Plaintiff attorneys' fees and costs pursuant to N.Y. PEP LAW
§346(5).

7. Awarding Plaintiff costs of litigation and reasonable attorneys' fees pursuant
to 15 U.S.C. §1692k(a)(3); and

8. Such other and further relief that the Court may deem just and proper.

9.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated:  May 2, 2013

Respectfully submitted,

By: /s/ Hashim Rahman, Esq.

Hashim Rahman, Esq.
Rahman Legal
155 Water Street
Brooklyn, NY 11201
hrahman@rahmanlegal.com
Phone: (347) 433-6139
Fax:    (347) 382-9457